# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SANDRA TEUBER AND JAMES TEUBER, | Case No.: |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| FCA US LLC, a Delaware Limited Liability Company, | |
| Defendant. | |

## **COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................1

II. JURISDICTION ........................................................................7

III. VENUE ....................................................................................8

IV. PARTIES ..................................................................................8

    A. Plaintiffs...............................................................................8

    B. Defendant............................................................................11

V. FACTUAL ALLEGATIONS ...................................................12

    A. FCA Marketed the Fire Risk Vehicles as Safe, Durable, and Reliable ...13

    B. The Spontaneous Fire Risk.................................................17

VI. TOLLING OF THE STATUE OF LIMITATIONS.....................26

    A. Discovery Rule Tolling .......................................................26

    B. Estoppel ..............................................................................27

VII. CAUSES OF ACTION.............................................................27

    COUNT I – VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301, et seq.)................................27

    COUNT II – STRICT PRODUCT LIABILITY ...........................31

    COUNT III – NEGLIGENCE .....................................................32

    COUNT IV – NEGLIGENT MISREPRESENTATION ..............34

    COUNT V – BREACH OF IMPLIED WARRANTY OF MERCHANGEABILITY UNDER ILLIOIS LAW (810 ILCS 5/2A-212)..35

    COUNT VI – VIOLATION OF THE ILLICOIS CONSUMER FRAUD ACT ...........................................................................37

REQUEST FOR RELIEF ...............................................................40

DEMAND FOR JURY TRIAL .......................................................41

Plaintiffs allege the following based on personal knowledge as to their own experiences and, as to all other matters, based on the investigation of counsel:

## I.      INTRODUCTION

1.      The most important duty of a car manufacturer is to provide consumers with a safe car.

2.      FCA US LLC ("FCA") breached this fundamental duty by selling 2021–2023 Jeep Wrangler and Jeep Gladiator vehicles (the "Fire Risk Vehicles") that were dangerous and prone to an underhood fire.

3.      On information and belief, the Fire Risk Vehicles contain a defect in the power steering pump electrical connector that can cause vehicle fires, both while the vehicles are being driven and when the vehicles are parked (the "Spontaneous Fire Risk").[1] FCA knew or should have known for several years that these vehicles were prone to underhood fires but failed to remedy the defect.

4.      The Spontaneous Fire Risk exposed Plaintiffs to an unreasonable risk of accident, injury, death, or property damage.

5.      The Spontaneous Fire Risk manifested in Plaintiffs' 2022 Jeep Gladiator on July 5, 2024, when their vehicle spontaneously caught fire while parked in the driveway of their home. The fire was not only traumatic for Plaintiffs

---

[1] *See* **Exhibit 1**, Steven Symes, *Jeep Wranglers And Gladiators Keep Catching Fire*, THE AUTO WIRE (Sept. 11, 2024), https://theautowire.com/2024/09/11/jeep-wranglers-and-gladiators-keep-catching-fire.

1

and their family, it also caused extensive property damage and led to Plaintiffs incurring significant out-of-pocket costs. The images below are of the Plaintiffs' vehicle fire:

**Photos of Plaintiffs' 2022 Jeep Gladiator engulfed in flames:**





**Photos of Plaintiffs' 2022 Jeep Gladiator after spontaneously combusting:**









6.     As of the date of this filing, at least ten vehicle fires have been reported to FCA or NHTSA, one of which resulted in an injury.[2] The ongoing NHTSA investigation covers over 781,000 Jeep Wrangler and Gladiator vehicles.[3]

7.     FCA also knew or should have known about the Spontaneous Fire Risk before NHTSA opened its investigation based on consumer complaints of underhood fires in the Fire Risk Vehicles made to FCA, NHTSA, and elsewhere online.

8.     Many of the Fire Risk Vehicles have already been recalled for other defects that created a fire risk, although FCA has yet to issue a recall for the Spontaneous Fire Risk alleged herein.

9.     Hundreds of thousands of vehicles on the road and parked in or around structures and other vehicles are at risk of catching fire, and their owners are without a safely operable vehicle for an unknown and potentially lengthy period.

10.    Because of FCA's breach of implied warranty of merchantability and its failure to provide a remedy for the Spontaneous Fire Risk once the fires began occurring, Plaintiffs have been injured in fact, incurred damages, suffered

---

[2] *Id. See also* **Exhibit 2**, *Complaints, NHTSA ID: 11403621*, NHTSA.GOV (September 29, 2024) https://www.nhtsa.gov/?nhtsaId=11617119 (last visited January 8, 2025)

[3] **Exhibit 3**, *Jeep Wrangler, Gladiator engine fires investigated by NHTSA*, THE DETROIT NEWS (Sept. 9, 2024),
https://www.detroitnews.com/story/business/autos/chrysler/2024/09/09/jeep-engine-fires-investigated-by-nhtsa/75142212007/.

emotional and physical harm, and suffered ascertainable losses in money and property.

11.    Had Plaintiffs been advised of the Spontaneous Fire Risk when they purchased the vehicle, they would not have subjected themselves and their family to grave risk of injury or death and would not have purchased the vehicle. The fire in Plaintiffs' Fire Risk Vehicle caused emotional and physical harm, necessitated expensive home and property repairs, destroyed personal property, required additional car payments, and other costly harm.

## II.    JURISDICTION

12.    Plaintiffs Sandra and James Teuber are citizens of Illinois and domiciled in Illinois.

13.    Defendant FCA is completely diverse from both Plaintiffs because it is a Delaware Limited Liability Partnership with its headquarters in Auburn Hills, Michigan.

14.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332. There exists complete diversity between the parties. This case concerns Plaintiffs' 2022 Jeep Gladiator spontaneously bursting into flames while parked in Plaintiffs' driveway, only feet from their home. Not only was Plaintiffs' vehicle completely destroyed, but the fire damaged Plaintiffs' residence, destroyed personal property, and caused

physical and emotional harm to Plaintiffs. As such, the amount in controversy exceeds $75,000.

15.     This Court has personal jurisdiction over the Defendant by virtue of its transactions and business conducted in this jurisdiction, and because Defendant is headquartered in Michigan. Defendant has transacted and done business, and violated statutory and common law, in the State of Michigan and in this judicial district.

### III.   VENUE

16.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant transacts substantial business and is headquartered in this district.

### IV.   PARTIES

**A.     <u>Plaintiffs</u>**

17.     Plaintiffs Sandra and James Teuber are residents and citizens of Bull Valley, Illinois. On or about September 22, 2022, Plaintiffs leased a new 2022 Jeep Gladiator from Crystal Lake Chrysler Dodge Jeep Ram in Crystal Lake, Illinois. Plaintiffs' Jeep Gladiator is a Fire Risk Vehicle equipped with the Spontaneous Fire Risk.

18.     Through exposure and interaction with FCA, Plaintiffs were aware of FCA's uniform and pervasive marketing messages of safety and dependability. Prior to leasing their vehicle, Plaintiffs saw commercials for the Jeep Gladiator.

Specifically, Plaintiffs viewed the Superbowl "Groundhog Day" commercial.[4] They also viewed Jeep's website where they reviewed the details of the Jeep Gladiator, as well as saw videos and pictures of the vehicle. These were primary reasons Plaintiffs purchased the Fire Risk Vehicle. However, despite touting the safety and dependability of the Fire Risk Vehicles, at no point prior to Plaintiffs' leasing their Fire Risk Vehicle, did FCA disclose to Plaintiffs the Spontaneous Fire Risk.

19.     On July 5, 2024, while Mr. Teuber was mowing the lawn of Plaintiffs' home, he noticed black smoke coming from the front of the home. Thinking their house was on fire, Mr. Teuber ran around to the front of the home, where he saw Plaintiffs' 2022 Jeep Gladiator engulfed in flames. The vehicle was parked in the driveway of their home, approximately 10 feet from the house and attached garage. The vehicle had been parked for approximately 24 hours. Mr. Teuber called 911 and ran into the house to evacuate Ms. Teuber and their children from the home. Mr. Teuber tried to put the fire out with a hose, but he was unable to control the fire. The burning vehicle created a strong smell of burning rubber and chemicals.

---

[4] https://www.youtube.com/watch?v=P3qH4TKLP0c

20.     Approximately 20 minutes later, the fire department arrived. Upon arrival, the vehicle was completely engulfed in flames and was melting the garage door and trim. The fire department crew attempted to extinguish the fire, but they were unable to access the fuel tank. Firefighting foam was used to keep the fire under control. The fire department called a tow truck to lift the vehicle to gain access to the underside. The crew was then able to extinguish the fire, and the vehicle was towed from the scene.

21.     As a result of the fire, twenty gallons of fuel spilled from the vehicle onto Plaintiffs' property. The fire department had to use 35 gallons of firefighting foam and 3,800 gallons of water to control and extinguish the fire.

22.     Plaintiffs lost their vehicle due to the Spontaneous Fire Risk and were forced to purchase a replacement vehicle, which caused them to incur significant out-of-pocket expenses. In addition, the home and surrounding property sustained significant damage. The fire damaged the garage doors, the trim of the garage, and a light fixture within the garage, as well as the windows of the home located above the garage. Ms. Teuber lost a pair of prescription eyeglasses and a pair of prescription sunglasses that had been in the vehicle at the time of the fire. Property surrounding the vehicle was burned and damaged, requiring replacement of Plaintiffs' driveway. The fire, chemicals, and firefighting foam damaged the landscape, killing plants and shrubbery. Plaintiffs and their family were exposed

to the smoke and fumes from the burning vehicle, fuel, and firefighting foam. No assistance was provided in cleaning up the debris from the fire, forcing Plaintiffs to clean up the debris themselves, including burned pieces of their vehicle, fuel, and the firefighting foam, increasing their exposure to harmful substances.

23.     The firefighting foam used to extinguish the fire spread across Plaintiffs' property and into the soil. Firefighting foam commonly contains per- and polyfluoroalkyl substances (PFAS).[5] PFAS are a class of man-made chemicals that are not found naturally in the environment. PFAS are highly toxic, and are hazardous to human health and the environment. The toxic chemicals migrated into and contaminated Plaintiffs' property. Testing conducted after the fire and paid for by Plaintiffs shows that PFAS is present in the soil of Plaintiffs' property.

24.     Following the spontaneous fire, FCA conducted an inspection of Plaintiffs' Fire Risk vehicle, but Plaintiffs have received no information from that inspection or communications from FCA following the inspection. Ms. Teuber contacted Jeep's corporate office multiple times, but never received a return phone call.

**B.    <u>Defendant</u>**

---

[5] **Exhibit 4**, PFAS - Perfluoroalkyl and polyfluoroalkyl substances, PUBLICHEALTH.VA.GOV, https://www.publichealth.va.gov/exposures/pfas.asp; *see also* **Exhibit 5**, "Forever Chemicals" Called PFAS Show Up in Your Food, Clothes, and Home, NRDC.ORG, https://www.nrdc.org/stories/forever-chemicals-called-pfas-show-your-food-clothes-and-home

25.     Defendant FCA US LLC ("FCA"), formerly known as Chrysler Group, is a Delaware limited liability company organized and existing under the laws of the State of Delaware, and is wholly owned by Stellantis N.V., a Dutch corporation headquartered in Amsterdam, Netherlands. FCA's principal place of business and headquarters is at 1000 Chrysler Drive, Auburn Hills, MI 48326.

26.     FCA is a motor vehicle manufacturer and a licensed distributor of new, previously untitled Chrysler, Dodge, Jeep, and Ram brand motor vehicles. FCA's Chrysler brand is one of the "Big Three" American automobile brands. FCA engages in commerce by distributing and selling new and used passenger cars and motor vehicles under its Chrysler, Dodge, Jeep, and Ram brands.

27.     FCA, through its various entities, designs, manufactures, markets, distributes, and sells automobiles throughout the U.S. and worldwide. FCA and/or its agents designed and manufactured the Fire Risk Vehicles. FCA also developed and disseminated the owner's manuals and warranty booklets, advertisements, brochures, and other promotional materials relating to the Fire Risk Vehicles, with the intent that such documents be purposely distributed throughout all fifty states. FCA is engaged in interstate commerce, selling vehicles through its network in every state of the United States.

## V.     FACTUAL ALLEGATIONS

12

**ADVANCED SAFETY & SECURITY SYSTEMS**

WHEN IT COMES TO YOUR WELL-BEING ON THE ROAD, JEEP₍₎ GLADIATOR IS READY AND WILLING TO STAND AS A CONSTANT GUARDIAN. GLADIATOR ENVELOPS YOU WITH MORE THAN 80 STANDARD AND AVAILABLE SAFETY & SECURITY FEATURES. SENSORS AND CAMERAS KEEP WATCH AROUND YOUR PERIMETER TO HELP PROVIDE PEACE OF MIND.

2021–2023 Jeep Gladiator Brochures. [6]

**A.   FCA Marketed the Fire Risk Vehicles as Safe, Durable, and Reliable**

28.    Throughout its marketing brochures for the Fire Risk Vehicles, FCA emphasizes the vehicles' safety, durability, and reliability, evidencing the materiality of these features to buyers.

29.    The brochures for the Fire Risk Vehicles prominently advertise their advanced safety features:

**ADVANCED SAFETY & SECURITY SYSTEMS**

WHEN IT COMES TO YOUR WELL-BEING ON THE ROAD, JEEP₍₎ WRANGLER IS READY AND WILLING TO STAND AS A CONSTANT GUARDIAN. WRANGLER ENVELOPS YOU WITH MORE THAN 75 STANDARD AND AVAILABLE SAFETY & SECURITY FEATURES. SENSORS AND CAMERAS KEEP WATCH AROUND YOUR PERIMETER FOR COMPLETE PEACE OF MIND.

2021–2022 Jeep Wrangler Brochures.[7]

---

[6]  **Exhibit 6**, *2021 Gladiator*, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Gladiator/-Jeep_US%20Gladiator_2021.pdf            (last visited Jan. 12, 2025); **Exhibit 7**, *2022 Gladiator*, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Gladiator/Jeep_US%20Gladiator_2022.pdf            (last visited Jan. 12, 2025); **Exhibit 8**, *2023 Gladiator*, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Gladiator/Jeep_US%20-Gladiator_2023.pdf (last visited Jan. 12, 2025).

[7]  **Exhibit 9**, *2021 Wrangler*, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Wrangler/-Jeep_US%20Wrangler_2021.pdf            (last visited Jan. 12, 2025); **Exhibit 10**, *2022 Wrangler*, AUTO-BROCHURES.COM,



2021–2023 Jeep Gladiator Brochures.[8]



2021–2022 Jeep Wrangler Brochures.[9]

---

https://www.auto-brochures.com/makes/Jeep/Wrangler/Jeep_US%20Wrangler_2022.pdf (last visited Jan. 12, 2025).

[8] *See* Ex. 6, at 33; Ex. 7, at 23; Ex. 8, at 25.

[9] *See* Ex. 9, at 31; Ex. 10, at 27.

30. The brochures also advertise the vehicles' superior quality and workmanship:



2021 Jeep Gladiator Brochure.[10]

**THE TRUCK THAT DOES IT ALL:** HAULS, TOWS, AND DELIVERS YOU TO THE GREAT WIDE OPEN WITH LEGENDARY CAPABILITY, OUTSTANDING UTILITY, INTUITIVE TECHNOLOGY AND TRADEMARK OPEN-AIR FREEDOM THAT THE JEEP₀ BRAND IS KNOWN FOR.

2022 Jeep Gladiator Brochure.[11]

---

[10] *See* Ex. 6, at 2.
[11] *See* Ex. 7, at 2.



2023 Jeep Gladiator Brochure.[12]



2021 Jeep Wrangler Brochure[13]

---

[12] *See* Ex. 8, at 3.
[13] *See* Ex. 9, at 3.

proven off-road capability
starts with 80 years of innovation

IN 1941, THE JEEP BRAND OPENED THE DOOR TO AUTHENTIC
CAPABILITY BY DEVELOPING THE FIRST 4WD SYSTEM, AND
EVER SINCE, IT'S BEEN MOVING THE WORLD FORWARD WITH
INDUSTRY-CHANGING ENGINEERING INNOVATIONS THAT GIVE
YOU PERMISSION TO GO ANYWHERE, DO ANYTHING.

2021 Jeep Wrangler Brochure[14]

**B.**  **The Spontaneous Fire Risk**

31.     On September 6, 2024, the National Highway Traffic Safety Administration ("NHTSA") opened Investigation No. PE24024 into a defect causing underhood fires in an estimated 781,459 model year 2021–2023 Jeep Gladiator  and vehicles.[15]

32.     To date, there have been 10 engine compartment fires in the Fire Risk Vehicles that are suspected to originate from the power steering pump electric connector located in the passenger front side of the engine compartment.[16]

33.     At least one injury was reported from these fires.[17]

---

[14] *Id*. at 7.

[15] **Exhibit 11**, *ODI Resume PE24024*, NHTSA.GOV (Sept. 6, 2024), https://static.nhtsa.gov/odi/inv/2024/INOA-PE24024-19581.pdf (last visited Jan. 12, 2025).

[16] *Id*.

[17] *Id.*

34.     The majority of the underhood fires occurred while the vehicle's ignition was off.[18]

35.     As NHTSA states, "An ignition 'OFF' vehicle fire can result in an increased risk of occupant injury, injury to persons outside the vehicle, and property damage, with little to no warning."[19]

36.     NHTSA's ongoing investigation is "assess[ing] the cause, scope, and frequency of the alleged defect."[20]

37.     In September 2024, Plaintiffs filed a complaint with NHTSA following the spontaneous combustion of their vehicle:[21]

> NHTSA ID Number: 11617119
>
> Incident Date: July 5, 2024
> Consumer Location: Uknown
> Vehicle Identification Number: 1C6JJTBG4NL******
> Summary of the Complaint: In the early afternoon hours of July 5, 2024, our 2022 jeep gladiator rubicon with only 18,000 miles spontaneously combusted in our driveway after being parked there for just under 24 hours. While working in the yard, my husband noticed thick black smoke coming from the engine. The smoke quickly turned into flames then rapidly intensified as it spread throughout the engine, cabin and then ultimately the entire jeep. The jeep was a total and complete loss with Jeep claiming no responsibility whatsoever. We have over $60,000 in damages to our home, driveway,

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *See* Ex. 2.

landscaping and soil (PFAS) from the fire, NOT including the jeep itself. Note *The engine light did go on about a month prior to the fire, which from what we were told by Jeep service dept, was due to multiple misfires. This issue was resolved immediately. After the fire, the jeep was inspected by our insurance company and also by Jeep. Because the fire was so intense and quickly spread, there wasn't anything left. Jeep never returned our calls and never once tried to make things right! Our safety was at risk for obvious reasons. The Jeep spontaneously started on fire due to no fault of our own. Had we not have been home, or had the Jeep been parked in our garage, facing the garage or the fire started at night while we were sleeping, the outcome would have been quite different. The damage it DID do to our property along with the mental anxiety and stress of trying to pay for repairs is significant enough without actually having our house burn down to the ground. This is unacceptable! Jeep needs to take responsibility!
1 Affected Product: 2022 Jeep Gladiator

38.     Plainly, Plaintiffs' Fire Risk Vehicle was not suitable and safe for use in an intended and reasonably foreseeable manner.

39.     On information and belief, FCA knew or should have known about the Spontaneous Fire Risk before it sold the Fire Risk Vehicle to Plaintiffs and well before NHTSA opened an investigation into the problem, as evidenced by consumer complaints lodged with FCA directly and with NHTSA and elsewhere online.

40.     On information and belief, FCA received complaints about underhood fires in the Fire Risk Vehicles no later than March 2021.[22]

41.     All vehicle manufacturers, including FCA, are required by law to routinely monitor and analyze NHTSA complaints to determine whether vehicles or components should be recalled due to safety concerns. Thus, FCA has knowledge of all NHTSA complaints filed concerning the vehicles it manufactures, including the Fire Risk Vehicles. *See* TREAD Act, Pub. L. No. 106- 414, 114 Stat. 1800 (2000).

42.     Complaints submitted to FCA and NHTSA via Vehicle Owner Questionnaires ("VOQ") reveal multiple instances of Fire Risk Vehicles catching on fire.

43.     In March 2021, an underhood fire in a model year 2021 Jeep Wrangler:[23]

> NHTSA ID Number: 11403621
> Incident Date: March 16, 2021
> Consumer Location: RUMSON, NJ
> Vehicle Identification Number: 1C4HJXENXMW****
> Summary of Complaint: OUR 2021 JEEP STARTED SMOKING IN THE ENGINE AND WITHIN 10 MINUTES BURST INTO FLAMES. THE ENTIRE FRONT END WAS DAMAGED BEYOND REPAIR / BURNED AND FIRE STATIONS HAD TO PUT OUT THE FIRE. MY DAUGHTER, DOGS AND I WERE

---

[22] *See Complaints, NHTSA ID: 11403621*, NHTSA.GOV (Mar. 18, 2021), https://www.nhtsa.gov/?nhtsaId=11403621 (last visited Jan. 12, 2025).

[23] *Id.*

ABLE TO MAKE IT OUT OF THE CAR BUT VERY SCARY.
1 Affected Product: 2021 Jeep Wrangler

44.     In September 2021, an underhood fire in the model year 2021 Wrangler:[24]

NHTSA ID Number: 11436759
Incident Date: September 27, 2021
Consumer Location: BELLINGHAM, WA
Vehicle Identification Number: 1C4HJXCN3MW****
Summary of Complaint: The engine caught on fire after a short drive. The fire burned the entire top of the rear of the engine and completely through the wiring harness before I could extinguish it with a fire extinguisher and water. The fire appears to have started at the top rear of the engine where the fuel line enters the intake. The manufacturer, Stellantis, hired a special investigator from EAA/Bosch to look at it, and he agrees that it is similar to fires in similar engines that were recalled in October 2020, NHTSA Campaign number 21V-665. Stellantis has not responded to repeated requests for resolution.
1   Affected Product: 2021 Jeep Wrangler

45.     In November 2021, an underhood fire in a model year 2021 Jeep Wrangler:[25]

NHTSA ID Number: 11442560
Incident Date: November 13, 2021
Consumer Location: WICKENBURG, AZ
Vehicle Identification Number: 1C4HJXEG4MW****

---

[24]   *Complaints, NHTSA ID: 11436759*, NHTSA.GOV (Oct. 14, 2021), https://www.nhtsa.gov/?nhtsaId=11436759 (last visited Jan. 12, 2025).
[25]   *Complaints, NHTSA ID: 11442560*, NHTSA.GOV (Dec. 3, 2021), https://www.nhtsa.gov/?nhtsaId=11442560 (last visited Jan. 12, 2025).

Summary of Complaint: My 2021 Jeep Wrangler with 1900 miles caught on fire and was a total loss, preliminary investigation believes the cause of the fire to be a gas leak. There were no indications or warning lights, saw black smoke coming from the engine compartment by the time I pulled over and got out of the vehicle it was on fire and within minutes the entire car was engulfed by flames and it was a total loss.
1 Affected Product: 2021 Jeep Wrangler

46.    In May 2023, an underhood fire in a model year 2023 Jeep Wrangler:[26]

NHTSA ID Number: 11525680
Incident Date: May 11, 2023
Consumer Location: Unknown
Vehicle Identification Number: 1C4JJXP61PW****
Summary of Complaint: I am not sure if this is something that should be reported or not. My Jeep caught on fire in a drive thru on 5/11/23. It was only 3.5 months old and had 3,465 miles on it. I saw smoke coming from under the hood, then big black billowing smoke, when some guys got the hood open there were flames coming from behind the engine. They were able to put it out with a fire extinguisher but it caused alot of damage. It is available for inspection but I would need to know ASAP since it is at the dealer. About 3 minutes prior I was on the highway and this could have ended up so much worse as I had my two dogs with me as well. I contacted Jeep and they sent Engineering Analysis Associates/Bosch Automotive Service Solutions out to examine the car and they said "the information at hand would not permit us to associate the fire with a manufacturing or assembly error". No reason for the fire was given. Vehicle was inspected by insurance rep, investigator hired by the manufacturer. Police and fire dept were on scene at the

---

[26]   *Complaints, NHTSA ID: 11525680*, NHTSA.GOV (June 6, 2023), https://www.nhtsa.gov/?nhtsaId=11525680 (last visited Jan. 12, 2025).

time but did not create a report, just gave me an incident #. No warnings, messages or anything warned of the fire. I was able to drive it around to the front of the building to get it away from the building and other cars while their was smoke coming out of it. No warnings lights came on at all that I could see on the dash. I want to report this incase any other Wrangler 4XE's end up having the same issue.

1 Affected Product: 2023 Jeep Wrangler

47.   In August 2023, a fire in a model year 2022 Jeep Gladiator:[27]

NHTSA ID Number: 11585273
Incident Date August 6, 2023
Consumer Location NEW FRANKEN, WI
Vehicle Identification Number 1C6HJTFG9NL****
Summary of Complaint: My 2022 Jeep Gladiator burned to the ground with 2,500 miles. Jeep sent out their fire investigator and they said it was not a manufacture defect on their part. Allstate sent out their fire investigator and he said it WAS a Jeep manufacturer issue. Both Jeep and Allstate denied to give me copies of the report findings. My Jeep was parked and engine cold when it started smoldering and went up in flames. my VIN is [XXX] . I lost 12 months of payments plus $1800 in Ceramic coating along with another $2,000. in additional add ons. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).
1 Affected Product: 2022 Jeep Gladiator

48.   In January 2024, an underhood fire in a model year 2022 Jeep Gladiator:[28]

---

[27] *Complaints, NHTSA ID: 11585273*, NHTSA.GOV (Apr. 25, 2024), https://www.nhtsa.gov/?nhtsaId=11585273 (last visited Jan. 12, 2025).

[28] *Complaints, NHTSA ID: 11567979*, NHTSA.GOV (Jan. 26, 2024), https://www.nhtsa.gov/?nhtsaId=11567979 (last visited Jan. 12, 2025).

NHTSA ID Number: 11567979
Incident Date: January 24, 2024
Consumer Location: AUBURN, WA
Vehicle Identification Number: 1C6JJTBG6NL****
Summary of Complaint: Our 2022 Gladiator has 1,758 miles on it and no modifications. It was last driven about two weeks ago. It burned to the ground [XXX] while parked next to our house. The fire started in the engine compartment. There were no warnings of symptoms and our jeep app showed everything was normal when last driven. It was investigated by the VRFA and I am waiting for their report. Insurance has not yet inspected. We reported it to the dealership we bought it from. On the [XXX] website, there is another 2022 Gladiator, also low mileage, that also burned to the ground while parked. That person's insurance stated that they believe it burned due to a manufacturer defect but there are no recalls. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).
1 Affected Product: 2022 Jeep Gladiator

49.     In January 2024, an underhood fire in a model year 2021 Jeep Wrangler: [29]

NHTSA ID Number: 11570607
Incident Date: January 6, 2024
Consumer Location: LAYTON, UT
Vehicle Identification Number: 1C4JJXFM2MW****
Summary of Complaint: Fire started about 15 minutes after parking the Jeep. Flames and smoke first appeared in engine compartment on passenger side where an electrical panel is located. Fire spread quickly and burnt out entire front of vehicle before the fire department was able to extinguish the flames. Vehicle is a total loss.
1 Affected Product: 2021 Jeep Wrangler

---

[29] *Complaints, NHTSA ID: 11570607*, NHTSA.GOV (Feb. 7, 2024), https://www.nhtsa.gov/?nhtsaId=11570607 (last visited Jan. 12, 2025).

50.     In February 2024, an underhood fire in a model year 2022 Jeep

Gladiator: [30]

> NHTSA ID Number: 11573476
> Incident Date February 19, 2024
> Consumer Location FORESTVILLE, CA
> Vehicle Identification Number 1C6JJTBM7NL****
> Summary of Complaint: I was driving my Jeep Gladiator
> on [XXX] Shasta Co, CA, on a snowy mountain
> highway. I had my husband, two children and two dogs
> in the vehicle. Without warning the power steering went
> out. Within 20 seconds a steering wheel light appeared
> on the dash. Within approximately 20 more seconds, I
> was able to pull over into a plowed turnout. As soon as
> we stopped the vehicle we noticed a fire in the engine
> compartment. We were able to extinguish it within a few
> minutes with our fire extinguisher. The vehicle has
> approximately 15000 miles on it and is under warranty.
> It is currently under inspection to determine if it falls
> under warranty. INFORMATION REDACTED
> PURSUANT TO THE FREEDOM OF
> INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).
> 1 Affected Product: 2022 Jeep Gladiator

51.     In March 2024, an underhood fire in a model year 2022 Jeep

Wrangler:[31]

> NHTSA ID Number: 11576144
> Incident Date: March 6, 2024
> Consumer Location: TITUSVILLE, NJ
> Vehicle Identification Number: 1C4HJXEM2NW****

---

[30] *Complaints, NHTSA ID: 11573476*, NHTSA.GOV (Feb. 22, 2024),
https://www.nhtsa.gov/?nhtsaId=11573476 (last visited Jan. 12, 2025).
[31] *Complaints, NHTSA ID: 11576144*, NHTSA.GOV (Mar. 8, 2024),
https://www.nhtsa.gov/?nhtsaId=11576144 (last visited Jan. 12, 2025).

Summary of Complaint: The detective reported that the 2022 Jeep Wrangler spontaneously caught on fire. The contact stated that after the owner parked the vehicle, approximately six hours later a fire occurred which started in the engine compartment of the vehicle. The fire department was called to the scene and extinguished the flames. During the incident the vehicle was destroyed. No injuries were reported. A police and fire report was taken at the scene and the vehicle was later tow away. The cause of the failure was not yet determined. The manufacturer and local dealer were not notified by the contact. The contact was concern that the vehicle had experienced the same failure listed in the NHTSA Campaign Number: 23V787000(Electrical System) which did not include the diesel models. The contact indicated that the vehicle had experienced that same failure listed in the recall. The failure mileage was unknown.
1 Affected Product: 2022 Jeep Wrangler

52.     Despite FCA's knowledge of the serious risk of fire in the Fire Risk Vehicles, it has done nothing to remedy the problem or even warn consumers.

## VI.   TOLLING OF THE STATUE OF LIMITATIONS

### A.     <u>Discovery Rule Tolling</u>

53.     Because FCA concealed the existence of the Spontaneous Fire Risk, Plaintiffs had no way of knowing about the unreasonable fire risk of their vehicle.

54.     Within the period of any applicable statutes of limitation, Plaintiffs could not have discovered through the exercise of reasonable diligence that FCA was concealing the Spontaneous Fire Risk complained of herein.

55.     Plaintiffs did not discover, and did not know of, facts that would have caused a reasonable person to suspect that FCA did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that FCA had concealed information about the unreasonable fire risk of the Fire Risk Vehicles, which was discovered by Plaintiffs only shortly before this action was filed.

56.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as Plaintiffs' Fire Risk Vehicle.

**B.     Estoppel**

57.      FCA was under a continuous duty to disclose to Plaintiffs the true character, quality, and nature of the fire risk of their vehicle.

58.     FCA knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the fire risk of their vehicle.

59.     Based on the foregoing, FCA is estopped from relying on any statutes of limitations in defense of this action.

## VII.   CAUSES OF ACTION

### COUNT I
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
(15 U.S.C. § 2301, et seq.)**

60.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

61.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a).

62.     Plaintiffs' Fire Risk Vehicle is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). Plaintiffs are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

63.     FCA is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

64.     The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

65.     FCA provided Plaintiffs with an implied warranty of merchantability in connection with the purchase of their vehicle that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, FCA warranted that Plaintiffs' Fire Risk Vehicle was fit for its ordinary purpose as a safe vehicle and would pass without objection in the trade as designed, manufactured, and marketed, and was adequately contained, packaged, and labeled.

66.     FCA breached its implied warranty, as described in more detail herein, and is therefore liable to Plaintiffs pursuant to 15 U.S.C. § 2310(d)(1).

Plaintiffs' Fire Risk Vehicle contained a defect in that it was equipped with a power steering pump electrical connector that made the vehicle susceptible to a risk of spontaneously catching on fire, causing an unreasonable risk of death, serious bodily harm and/or property damage to Plaintiffs. This defect rendered Plaintiffs' Fire Risk Vehicle, when leased and at all times thereafter, unmerchantable and unfit for its ordinary use.

67.     As alleged herein, FCA knew or should have known of the defect.

68.     Any effort by FCA to limit the implied warranty in a manner that would exclude coverage of the Fire Risk Vehicle is unconscionable, and any such effort to disclaim or otherwise limit such liability is null and void.

69.     Any limitations FCA might seek to impose on its warranty are procedurally unconscionable. There was unequal bargaining power between FCA and Plaintiffs, as, at the time of lease, Plaintiffs had no other options for purchasing warranty coverage other than directly from FCA.

70.     Any limitations FCA might seek to impose on its warranty are substantively unconscionable. FCA knew that the Fire Risk Vehicles were defective and that the Fire Risk Vehicles could spontaneously ignite when used as intended before Plaintiffs purchased their Fire Risk Vehicle. FCA failed to disclose this defect to Plaintiffs. Thus, enforcement of the durational limitations on the warranty is harsh and would shock the conscience.

29

71.     Plaintiffs have had sufficient direct dealings with FCA to establish privity of contract between FCA and Plaintiffs. Nonetheless, privity is not required here because Plaintiffs are intended third-party beneficiaries of the contract between FCA and the FCA-certified/authorized dealership who leased the Fire Risk Vehicle to Plaintiffs, and specifically, of FCA's implied warranty. The dealers were not intended to be the ultimate consumers of the Fire Risk Vehicles and have no rights under the warranty agreements provided with the Fire Risk Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because Plaintiffs' Fire Risk Vehicles was a dangerous instrumentality due to the aforementioned defect, as a spontaneous fire presented an unreasonable risk of death, serious bodily harm and/or property damage to Plaintiffs, as well as their home, other nearby structures and vehicles, passengers and bystanders.

72.     Plaintiffs would suffer economic hardship if they did not receive the return of all payments made by them. Because FCA will not acknowledge any revocation of acceptance and immediately return any payments made, Plaintiffs have not re-accepted their vehicle by retaining them.

73.     The amount in controversy of Plaintiffs' claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined

in this lawsuit. Plaintiffs seek all damages permitted by law, including diminution in value of their vehicle, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs in connection with the commencement and prosecution of this action.

<u>**COUNT II**</u>
**STRICT PRODUCT LIABILITY**

74. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

75. At all relevant times, FCA was involved in the design, manufacture, marketing, assembly and/or testing of Plaintiffs' Fire Risk Vehicle, and its component parts, which spontaneously combusted while parked in Plaintiffs' driveway.

76. FCA was responsible for placing Plaintiffs' Fire Risk Vehicle into the stream of commerce in the State of Illinois.

77. It was reasonably foreseeable to FCA that vehicle fires similar to the fire that engulfed Plaintiffs' Fire Risk Vehicle would occur during the normal and ordinary use of the vehicles.

78. Plaintiffs' vehicle did not perform as safely as an ordinary consumer of the vehicle would expect, despite the vehicle's use for its intended purpose.

31

79.     The power steering pump electrical connector that made Plaintiffs' Fire Risk Vehicle susceptible to a risk of spontaneous combustion was defectively manufactured, designed, marketed, engineered and/or tested.

80.     The risks of the Fire Risk Vehicles' design did not outweigh the benefits since FCA could have utilized safer alternative designs at the time Plaintiffs' Fire Risk Vehicle was designed, manufactured, and sold.

81.     The acts and/or omissions of FCA were a proximate cause of the fire at Plaintiffs' property.

82.     The acts and/or omissions of FCA were a proximate cause of Plaintiffs' damages.

## COUNT III
## NEGLIGENCE

83.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

84.     At all relevant times, FCA was involved in the design, manufacture, marketing, assembly and/or testing of Plaintiffs' Fire Risk Vehicle, and its component parts, which spontaneously combusted while parked in Plaintiffs' driveway.

85.     FCA was responsible for placing Plaintiffs' Fire Risk Vehicle into the stream of commerce in the State of Illinois.

86.     At all relevant times, FCA owed Plaintiffs a duty to exercise reasonable care in the design, manufacture, marketing, assembly, and/or testing of their Fire Risk Vehicle, including a duty to ensure that the vehicle did not cause Plaintiffs, other users, bystanders, and/or members of the public, unnecessary property damage, injury, or death.

87.     It was reasonably foreseeable to FCA that vehicle fires similar to the fire that engulfed Plaintiffs' Fire Risk Vehicle would occur during the normal and ordinary use of its vehicles.

88.     Indeed, FCA knew about the Spontaneous Fire Risk before the Fire Risk Vehicle was sold to Plaintiffs.

89.     The injuries suffered by Plaintiffs occurred because their Fire Risk Vehicle was not reasonably and safely designed or manufactured by FCA and/or not reasonably fit to safely be used as intended and advertised.

90.     FCA knew or should have known that Plaintiffs' Fire Risk Vehicle was unreasonably dangerous. Consequently, FCA was negligent and breached its duty of care to Plaintiffs in the following ways:

      a.     FCA failed to exercise due care in the design, manufacture, assembly, marketing, engineering and/or testing of Plaintiffs' Fire Risk Vehicle in order to avoid the types of injuries experienced by Plaintiffs;

33

b.   FCA failed to incorporate within Plaintiffs' Fire Risk Vehicle reasonable safeguards, proper components, and safe engineering to avoid the vehicle spontaneously exploding into flames;

c.   FCA failed to take adequate steps to identify and/or mitigate the Spontaneous Fire Risk, including the defect in the power steering pump electric connector; and

d.   FCA was otherwise careless or negligent in the design, manufacture, assembly, marketing, engineering and/or testing of Plaintiffs' Fire Risk Vehicle.

91.   As a direct result of FCA's negligence, Plaintiffs suffered harm in an amount to be determined by a jury following trial.

## COUNT IV
## NEGLIGENT MISREPRESENTATION

92.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

93.   FCA had a duty to provide honest and accurate information to consumers, including Plaintiffs, so that they could make informed decisions on the safety of their vehicle and whether it was safe to park their vehicle near their home.

94.   Plaintiffs considered the safety and susceptibility to catastrophic fire events to be an important factor when using and parking their Fire Risk Vehicle.

34

A vehicle's safety and susceptibility to catastrophic fire is material to the average, reasonable consumer.

95.    FCA knew, or in the exercise of reasonable diligence, should have known, that the average, reasonable consumer, including Plaintiffs, would be misled by FCA's misleading and deceptive advertisements, communications, and statements regarding the safety and reliability of the Fire Risk Vehicles.

96.    Plaintiffs justifiably relied on FCA's misrepresentations and omissions and were actually misled and deceived and were induced by FCA to use the vehicle in the manner advertised and intended. If FCA had disclosed the truth about the Spontaneous Fire Risk, Plaintiffs would have taken steps to prevent their vehicle from spontaneously combusting while parked in their driveway, adjacent to their home.

97.    As a result of FCA's conduct, Plaintiffs have been damaged in an amount to be determined at trial.

<u>**COUNT V**</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER ILLINOIS LAW**
**(810 ILCS 5/2A-212)**

98.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

99.    FCA is and was at all relevant times a "merchant" with respect to motor vehicles under 810 ILCS §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of

motor vehicles with respect under § 5/2A-103(1)(d). FCA is and was at all relevant times a "lessor" with respect to motor vehicles under 810 ILCS § 5/2A-103(1)(p).

100.   Plaintiffs' vehicle is and was at all relevant times "goods" within the meaning of 810 ILCS § 5/2A-103(1)(h).

101.   Under Illinois law, an implied warranty of merchantability is attached to Plaintiffs' vehicle. 810 ILCS § 5/2A-212.

102.   Plaintiffs' Fire Risk Vehicle was not merchantable when leased because it posed an unreasonable risk of underhood fire due to the Spontaneous Fire Risk. Plaintiffs' Fire Risk Vehicle contains a defect in that it was equipped with a power steering pump electrical connector that made the vehicle susceptible to a risk of spontaneously catching on fire, causing an unreasonable risk of death, serious bodily harm and/or property damage to Plaintiffs. This defect rendered Plaintiffs' Fire Risk Vehicle, when leased and at all times thereafter, unmerchantable and unfit for its ordinary use of driving.

103.   FCA breached the implied warranty of merchantability to Plaintiffs by leasing to Plaintiffs the Fire Risk Vehicle containing a defect that could lead to the sudden incineration of the vehicle during ordinary operating conditions, or while off and parked. This defect has deprived Plaintiffs of the benefit of their bargain.

104.   FCA was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of their Fire Risk Vehicle by certified mail from Plaintiffs' counsel to FCA, dated November 20, 2024, by direct communications to FCA, FCA's own inspection of Plaintiffs' vehicle following the fire, consumer complaints to NHTSA regarding the defect that is the subject of this complaint, Plaintiffs' own NHTSA complaint regarding the fire in their vehicle, and/or by the allegation in this complaint.

105.   Plaintiffs were the third-party beneficiaries of FCA's contract with the FCA-certified/authorized dealership who leased the Fire Risk Vehicle to Plaintiffs.

106.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT VI
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT
### (815 ILCS § 505/1 *et seq.*)

106.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

107.   FCA is a "person" as defined in 815 ILCS 505/1(c).

108.   Plaintiffs' Fire Risk Vehicle is "merchandise" within the meaning of 815 ILCS § 505/1(b).

109. FCA's marketing, distribution, and sale of Plaintiffs' vehicle constitutes "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

110. The Illinois Consumer Fraud Act (ICFA) prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 502/2.

111. FCA engaged in unfair or deceptive acts or practices within the meaning of the ICFA.

112. In the course of its trade or commerce, FCA exhibited the "use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act,' approved August 5, 1965" within the meaning of the ICFA. 815 ILCS 505/2.

113. Specifically, FCA concealed and/or failed to disclose the Spontaneous Fire Risk in Plaintiffs' Fire Risk Vehicle, as described herein and otherwise

engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of a material fact with intent that others, including Plaintiffs, rely upon such concealment, suppression, or omission, in connection with the sale or lease of the Fire Risk Vehicles.

114. By failing to disclose and/or actively concealing the Spontaneous Fire Risk in Plaintiffs' Fire Risk Vehicle, which it marketed as safe, reliable, of high quality, and fit for ordinary use, FCA engaged in unfair and deceptive acts or practices in violation of the ICFA.

115. In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risks posed by the Spontaneous Fire Risk in Plaintiffs' Fire Risk Vehicle.

116. FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their vehicles.

117. FCA intentionally and knowingly misrepresented material facts regarding the Fire Risk Vehicles with the intent to mislead Plaintiffs.

118. FCA knew or should have known that its conduct violated the ICFA.

119.   As alleged above, FCA made material statements about the safety and reliability of the Fire Risk Vehicles that were either false or misleading.

120.   FCA owed Plaintiffs a duty to disclose the true safety and reliability of their Fire Risk Vehicle because FCA:

      a.   Possessed exclusive knowledge about the Spontaneous Fire Risk;

      b.   Intentionally concealed the foregoing from Plaintiffs;

      c.   Made incomplete representations about the safety and reliability of the Fire Risk Vehicles, including Plaintiffs' vehicle, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and/or

      d.   Had duties under the TREAD Act and related regulations to disclose and fix the defect.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against FCA, as follows:

      A.   The full amount of Plaintiffs' economic damages;

      B.   The full amount of Plaintiffs' non-economic and/or general damages;

      C.   The full amount of damages suffered by the Plaintiffs;

      D.   Exemplary damages to the full extent allowed by law;

      E.   The full amount of Plaintiffs' damages for personal injury, loss of consortium, society, companionship, advice, support guidance, or similar benefits, resulting from their physical and emotional injuries;

G.     Punitive damages;

H.     Plaintiffs' attorneys' fees and costs to the extent allowable;

I.     Prejudgment interest on Plaintiffs' damages; and

J.     Such other and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.


DATED: January 20, 2025              Respectfully submitted,

                                     */s/ Dennis A. Lienhardt*
                                     E. Powell Miller (P39487)
                                     Dennis A. Lienhardt (P81118)
                                     Dana E. Fraser (P82873)
                                     **THE MILLER LAW FIRM PC**
                                     950 W. University Drive, Suite 300
                                     Rochester, MI 48307
                                     Telephone: (248) 841-2200
                                     epm@millerlawpc.com
                                     dal@millerlawpc.com
                                     def@millerlawpc.com

                                     *Counsel for Plaintiffs*