UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


Sandra Teuber, *et al.*,

                    Plaintiffs,          Case No. 25-10189

v.                                       Judith E. Levy
                                         United States District Judge
FCA US, LLC,
                                         Mag. Judge Kimberly G. Altman
                    Defendant.

_____/

## OPINION AND ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO DISMISS AND TO COMPEL ARBITRATION [13]

Plaintiffs Sandra and James Teuber bring suit against Defendant FCA US LLC, alleging that certain vehicles manufactured, distributed, and sold by Defendant, including their own 2022 Jeep Gladiator, contain a defect "in the power steering pump electrical connector that can cause vehicle fires." (ECF No. 12, PageID.443.)

Before the Court is Defendant's motion to compel arbitration, or in the alternative, to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). (ECF No. 13.) The motion is fully

briefed. (ECF Nos. 14, 17.) Plaintiffs also filed a notice of supplemental authority. (ECF No. 15.)

For the reasons set forth below, Defendant's motion to compel arbitration and to dismiss is denied without prejudice. (ECF No. 13.)

## I.    Background

Plaintiffs Sandra and James Teuber live in Bull Valley, Illinois, and leased a 2022 Jeep Gladiator on September 22, 2022. (ECF No. 12, PageID.450.) On July 5, 2024, their Jeep burst into flames while parked in front of their home. (*Id.* at PageID.451.) The fire department eventually extinguished the flames, but the vehicle and property inside the vehicle were completely destroyed. (*Id.* at PageID.449, 451–453.) The flames damaged parts of their home including their garage door. (*Id.* at PageID.453.) Fuel spilled from the vehicle onto their property and firefighting foam used by the fire department exposed Plaintiffs, their family, and their property to toxic chemicals, such as per- and polyfluoroalkyl substances ("PFAS"). (*Id.* at PageID.452–453.) Plaintiffs allege that the fire caused significant out-of-pocket expenses, such as purchasing a replacement vehicle, repurchasing property lost to the flames, fixing damage to their home and landscaping, and removing

2

debris. (*Id.* at PageID.453.) FCA inspected the vehicle, but Plaintiffs did not receive "communications from FCA following the inspection." (*Id.* at PageID.454.)

Plaintiffs believe that the fire occurred due to a "defect in the power steering pump electrical connector," which can "cause vehicle fires, both while the vehicles are being driven and when the vehicles are parked." (*Id.* at PageID.443.) Plaintiffs also believe that Defendant "knew or should have known about the Spontaneous Fire Risk" before it sold the vehicle to Plaintiffs, (*id.* at PageID.462), and before it issued "advertisements, communications, and statements regarding the safety and reliability of the [Vehicles]." (*Id.* at PageID.478.)

Plaintiffs' amended complaint contains the following counts:

Count 1: Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*;

Count 2: Strict Product Liability;

Count 3: Negligence;

Count 4: Negligent Misrepresentation;

Count 5: Breach of Implied Warranty of Merchantability under Illinois Law, 810 Ill. Comp. Stat. 5/2-314 & 5/2A-212; and,

Count 6: Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act,[1] 815 Ill. Comp. Stat. 505/1 *et seq.*

(ECF No. 12.)

Defendant seeks an order compelling arbitration. (ECF No. 13.) Defendant also seeks dismissal of the amended complaint under Rule 12(b)(6). (*Id.*)

## II.    Motion to compel arbitration

### A.    Legal Standard

"The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. § 2). The FAA instructs courts to enforce arbitration agreements if "the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4.

"[A]rbitration is a matter of contract," meaning "courts must 'rigorously enforce' arbitration agreements according to their terms." *In re StockX Customer Data Security Breach Litigation*, 19 F.4th 873, 878

---

[1] Plaintiffs refer to this Act as the "Illinois Consumer Fraud Act." (ECF No. 12, PageID.480–481.)

(6th Cir. 2021) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). "[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability.'" *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019)). In those arbitration agreements, the agreement contains a provision that clearly and unmistakably delegates such questions to the arbitrator. *Id.* at 879–80.

Although the parties can delegate arbitrability questions to the arbitrator, the Court still has a role in determining whether arbitration should be compelled:

> *First*, we resolve any challenge that pertains to the *formation* or *existence* of the contract containing the delegation provision. If a contract exists, we proceed to step two.
>
> *Second*, we decide any remaining *enforceability* or *validity* challenge only if it would "affect the [delegation provision] alone" or "the basis of [the] challenge [is] directed specifically to the [delegation provision]."

*Id.* at 880 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71–72 (2010)). Further, the Court must "apply ordinary state-law principles that govern the formation of contracts." *Id.* at 881 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

When determining if the existence of an arbitration agreement is at issue, the Court "applies the standard for summary judgment" and the movant "must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists." *Id.* at 880–81. If the making of an agreement to arbitrate is at issue, the Court "shall proceed summarily to the trial thereof." 9 U.S.C. § 4. However, if the movant "presents evidence from which a reasonable jury could find all required elements of a contract with respect to the alleged arbitration agreement, and a party opposing arbitration fails to present evidence of a genuine dispute of material fact as to the validity of the agreement to arbitrate," *Memmer v. United Wholesale Mortg.*, No. 23-CV-11261, 2023 WL 8818298, at *3 (E.D. Mich. Dec. 18, 2023) (cleaned up) (citing *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002*); Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 839 (6th Cir. 2021)), then a trial is unnecessary and the parties should proceed to arbitration.

### B.   Analysis

Defendant argues that Plaintiffs are subject to mandatory arbitration through "[t]he warranty FCA provided for Plaintiffs' Jeep," which "includes a provision requiring arbitration of 'any dispute arising

out of or relating to *any aspect* of the relationship between [them] and FCA US.'" (ECF No. 13, PageID.813.) Defendant attaches to its motion a copy of the 2022 Warranty, which states,

> If your concern or dispute is not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and FCA US LLC will not be decided by a judge or jury but instead by a single arbitration administered by the **American Arbitration Association (AAA)** under its **Consumer Arbitration Rules** in effect at the time you signed the Agreement to Arbitrate. This includes claims arising out of your warranty and claims arising before this agreement, such as claims related to statements about our products.

(ECF No. 13-1.) According to Defendant, the provision's reference to the American Arbitration Association's Consumer Arbitration Rules indicates that disputes over arbitrability are delegated to the arbitrator. (ECF No. 13, PageID.814.) The Sixth Circuit has held that such reference to the AAA's Consumer Arbitration Rules "provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *StockX*, 19 F.4th at 878 n.2 (quoting *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020)). As such, the Court's review of arbitrability is limited to challenges to "the delegation

7

provision specifically" or "claims that the agreement to arbitrate was never concluded." *Id.* at 880 (cleaned up).

As an initial matter, the Court must decide which state law should be used to determine whether a contract was formed. *See id.* at 881 ("We 'apply ordinary state-law principles that govern the formation of contracts.'" (quoting *First Options*, 514 U.S. at 944)). For purposes of this motion, the Court will apply Illinois law.[2]

The parties dispute the formation of a contract to arbitrate. A valid contract requires "an offer and acceptance, consideration, and valid and certain contractual terms." *Direct Energy Bus., LLC v. City of Harvey*, 192 N.E.3d 591, 596 (Ill. App. Ct. 2021) (quoting *Lindy Lu LLC v. Illinois Central R.R. Co.*, 984 N.E.2d 1171 (Ill. App. Ct. 2013)). "For a contract to be enforceable, there must also be mutual assent as to the contract's terms." *Arbogast v. Chicago Cubs Baseball Club, LLC*, 194 N.E.3d 534, 542 (Ill. App. Ct. 2021). "Whether parties have mutually assented to the

---

[2] Neither party conducts a choice-of-law analysis. However, Plaintiffs reference Illinois state law on contract formation in their brief. (ECF No. 14, PageID.879.) Defendant does not indicate what state law the Court should use and cites to cases that use a variety of state laws on contract formation. (*See* ECF No. 17, PageID.956 (citing cases that use New Jersey, Texas, and Georgia state law).) Defendant does not dispute the use of Illinois law; as such, the Court will proceed with Illinois law.

terms of a contract is a question of fact" and "is determined by an objective standard." *Id.*

Generally, mutual assent is shown by the signing of a written contract. "However, it is also well settled that a party may, by acts and conduct, indicate assent to the terms of a written contract and become bound by its provisions, even though the party has not signed it." *Id.* at 543. "For a course of conduct to act as consent to a contract, it must be clear that the conduct relates to the specific contract in question." *Id.*

Here, Plaintiffs argue that the arbitration agreement lacked mutual acceptance. (ECF No. 14, PageID.879–880.) They contend that they never agreed to arbitrate and that Defendant "provides no evidence that Plaintiffs actually received [the booklet containing the warranty] when they leased their vehicle, let alone agreed to the terms therein." (*Id.*) Plaintiffs submit declarations stating that they did not receive the booklet before or during the transaction and that they never signed any agreement related to arbitration. (ECF Nos. 14-3, 14-4.)

Without presenting any evidence, Defendant respond that arbitration should still be compelled because Plaintiffs "concede (by not disputing) that copies of their warranty booklets were available to them

in connection with their vehicle lease *and* that they were afforded a reasonable opportunity to opt-out." (ECF No. 17, PageID.956–957.)

The Court first notes that the booklet's arbitration provision references signing an agreement to arbitrate or a form acknowledging it. (*See* ECF No. 13-1 ("You may opt out of arbitration within 30 days of taking delivery of the vehicle and <u>signing</u> the Arbitration Acknowledgment Form at the dealer." (emphasis added)); *see also id.* (stating that the applicable Consumer Arbitration Rules are those "in effect at the time you <u>signed</u> the Agreement to Arbitrate" (emphasis added)).) However, there is no evidence that Plaintiffs signed any form or agreement referencing arbitration, let alone an Arbitration Acknowledgement Form or an Agreement to Arbitrate. Defendant alludes to the possibility that Plaintiffs are "subject to an additional arbitration agreement in their lease contract with the dealership," (ECF No. 13, PageID.813 n.1), which may reference those signed Forms or Agreements related to arbitration.

Additionally, Defendant's argument regarding arbitration is insufficient and does not meet its burden. The movant seeking to compel arbitration "must initially carry its burden to produce evidence that

would allow a reasonable jury to find that a contract exists." *StockX*, 19 F.4th at 880–81. Here, Defendant states that "[t]he warranty FCA provided for Plaintiffs' Jeep includes a provision requiring arbitration," (ECF No. 13, PageID.813), and the sole piece of evidence it presents is a copy of a 2022 warranty agreement.

But Defendant does not provide any evidence demonstrating that Plaintiffs agreed to the arbitration provision. For example, Defendant does not present evidence that this booklet pertained to Plaintiffs' vehicle, that Plaintiffs' vehicle came with a copy of the booklet or that Plaintiffs would have otherwise been notified of or aware of the existence of the booklet, or that Plaintiffs failed to opt out of arbitration. Defendant has shown that there is a contract that it would like to apply to Plaintiffs, but does not "carry its burden to produce evidence," *StockX*, 19 F.4th at 880–81, demonstrating that this arbitration agreement pertains to Plaintiffs' vehicle and binds Plaintiffs.

As such, the Court is unable to conclude that a reasonable jury could find that an agreement to arbitrate exists based on the current factual record. *See id.* Defendant's motion to compel arbitration is denied.

### III.  Conclusion

For the reasons set forth above, the Court DENIES WITHOUT PREJUDICE Defendant's motion to compel arbitration and to dismiss. Limited discovery on the formation of the arbitration agreement is necessary before the Court can resolve the motion to compel arbitration. (*See* ECF No. 17, PageID.957 ("Should the Court decline to compel Plaintiffs to arbitration based on their vehicle warranty, it should . . . allow discovery into the issue.").) As such, the parties are ORDERED to conduct limited early discovery to determine the existence of any relevant arbitration agreements and the parties' potential rights to invoke those arbitration agreements, including but not limited to whether Plaintiffs are "subject to an additional arbitration agreement in their lease contract with the dealership." (*See* ECF No. 13, PageID.813 n.1.) The deadline to complete arbitration-related discovery is October 30, 2026. After this deadline, the parties shall appear for a status conference to be set by the Court to discuss the status of the parties' arbitration-related discovery and, if appropriate, to set a briefing schedule for any proposed renewed motion to compel arbitration and/or motion to dismiss.

IT IS SO ORDERED.

Dated: July 6, 2026            s/Judith E. Levy
Ann Arbor, Michigan            JUDITH E. LEVY
                               United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 6, 2026.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager

13